Good morning, your honors. May it please the court, Jason Morgan on behalf of the United Cook Inlet Drift Association and the Cook Inlet Fisherman's Fund, which I will flexibly refer to as UCEDA. I would like to reserve five minutes for rebuttal. The Magnuson Act is our national charter for fishery conservation. Like a lot of federal conservation statutes, it sets up a model of cooperative federalism. The act sets up councils that are composed of state representatives, and those councils have a basic function. Develop fishery management plans that meet national standards and manage those fisheries for the benefit of the nation. As a result of Amendment 12 in this case to the Salmon FMP, NMFS and the council effectively rewritten that part of the act. Under Amendment 12, the council and NMFS have turned over that fishery to state management. And moving forward, that fishery will be managed under state standards, not national standards, and it will be managed for the benefit of Alaskans, not the benefit of the nation. This wholesale turnover of federal authority to the states is ultra-various and is contrary to the plain language of the Magnuson Act. And it's that plain language where I'd like to start my argument today, specifically with Section 16 U.S.C. 1852 H.1. That's the part of the Magnuson Act that sets out the functions of the council. And the very first function contains a clear and unambiguous mandate. The council shall produce a fishery management plan for each fishery under its authority that requires conservation and management. And the district judge in this case said the parties do not dispute that this fishery requires conservation and management. Is that your understanding of the record? That's right. That's ER 17. There isn't a dispute that this fishery requires conservation and management. It's been under conservation and management for over 100 years. It's a highly competitive fishery. It's 100% allocated. It's heavily utilized. And if there were no conservation and management measures in place for this fishery, it would be overfished like that. So they went on to say, but it doesn't require federal. Right. That's going on to say I'm rewriting the act to insert the word federal in there. That's exactly what their argument is. And I think that this ultimately just reflects a policy disagreement with what Congress instructed the councils to do. It's not that they don't understand what the mandate is. It's not that they don't know what Congress told us to do. It's that they disagree with whether it's a good idea. We have a fishery here that's been under state management essentially forever, but certainly for all times period relevant to this case. And let's assume for a moment that we disagree with your contention that the council was arbitrary and capricious in finding that state management was appropriate. It's kind of a strange thing, isn't it, to say we ought to have federal management nonetheless? I think we would disagree that it's a strange thing. Well, but let's assume that the state's doing a perfectly good job managing the fishery. What's the FMP supposed to do under those circumstances? Well, I think the act provides a mechanism expressly to do that. It's the delegation process, which is let's have the council set up a fishery management plan that is consistent with the national standards. If the state is doing a good job, we can incorporate state management and conservation measures into the fishery management plan, and then we can delegate day-to-day management of that fishery to the state. And what that retains is essential to the Magnuson Act. It's that continued federal oversight. It's written right into the act that the state would then continue to have to manage consistent with the MSA. So that ensures management of the federal fishery for all times, which is the purpose of the act. I take it the reason that wasn't done here is because the state management is under standards that aren't the same as the MSA? Well, I think that the state will get up here and argue, certainly they are, Your Honor, but we would disagree. But that's not in front of us. We don't have a delegation to the state. That's right. With a plan. That's right. So if we did have a state managing consistent with the MSA, you're saying we'd still would have to have a plan that delegated them that? Exactly. And that's exactly what it says in the act. And there's a reason, because it ensures continued, ongoing compliance with the standards of the Magnuson Act. The deferral process, and you won't find deferral anywhere in the statute or any criteria for when deferral is appropriate or what to do, when should I take that deferral away? It doesn't have any continuing oversight. The deferral process is subsection A, is it? I think the state would say, that's what's been referred to. That's the only basis for that statutory authority. And that's when there is no MFP, the state may exercise authority. That's right. Go ahead. Sorry, Your Honor. I want to make sure I understand one thing, and that is that the MSA applies in what they call the EEZ area, right? And so we start off with the MSA applying to this area, is that correct? Three miles to 200 miles. And what they did here, what the council did was to simply redefine the parameters. They took the cooking outlet out, this part of the EEZ, they took it out, so the three miles went. We're out, it's out. They took the one area where fishing, and fishing was actually happening, and they said we're not going to produce a fishery management plan for that area. So is there anything other than the way, by saying that the statute is ambiguous, is there any authority that allows them to do that? No. In fact, not only is there no authority, but they kept asking Congress for this authority, and they didn't get it. I mean, this is set out in our briefs, the legislative history from 1976, you've got Senator Gravel saying, hey, can't we make an exception for Alaska? Alaska's different. We do a great job of managing fisheries. We've been doing it forever. We've been doing it since even before statehood. We should be the ones managing this fishery. And Senator Stevens said, yeah, why don't we make an exception where you can turn it over to a state if it's consistent, state's management is consistent with the Magnuson Act. And Senator Magnuson said, no, we're not doing that. That's not going to be in the Act. That's out. And it didn't make it into the Act. Instead, he said, you can incorporate state's management measures into your plan. And then in 1983, you've got the state going back to Congress again. And I mean, it couldn't be more clear. It's right here in black and white. And so if you look at a reply addendum at page 22, fifth full paragraph, this is the state of Alaska to Congress in 1983. The Magnuson Act should be amended to direct the Secretary of Commerce to delegate authority of a domestic fishery in the federal conservation zone to the adjacent state when and only if two conditions exist. The fishery does not cross interstate boundaries and the state is, too, the state is capable and willing to provide conservation and management consistent with the national plan. No, they didn't give them that authority. What's that? They didn't give them that authority. They didn't get that. They didn't get that at all. And so. But the Act does have this notion of deferral. It doesn't have a notion of deferral. The word deferral doesn't appear in the statute. It has a delegation program. It's like every other federal conservation statute, Clean Air Act, Clean Water Act, Resource Covering Conservation Act. They've all got programs to delegate to states. Well, there is a subsection they refer to as deferral. But as a subsection, it says if there is no FMP, then the state has certain abilities to enforce. Right. In the EEZ, correct? That's right. And so. Tell me how you interpret that. Look at what that actually says. It says you can regulate state vessels if there's no FMP. Where's the requirement that the state manage that fishery in a manner consistent with the MSA? There isn't one. They don't have to. It's not in the statute. So and it also doesn't give them authority over all vessels. So if subsection A of 306 was intended to be, oh, here's your deferral process, then why would they have deferred to them authority over all fisheries? And why would they have done the deferral with the requirement that the fishery be managed in a manner consistent with the MSA? And there's more. That authority to regulate vessels that are registered under state law, that was in the act in 1976. That provision was in the original version of 306A, that a state can regulate fishing vessels if the vessels are registered under the laws of the state. So it was there. So it was there in 1976. So what's it there for? I guess I'm trying to ask you that question. What does A intended to do? I think it reflects the general idea in 1976 that we're not going to constrain the general state authority to regulate vessels that are doing commerce with you. In the absence of an MFP? In 1976, it's not in the absence of an MFP. But now it is. So what happens in 1996 is that someone says, well, we need to clarify this. If we have states trying to regulate in the areas where there's an FMP and state managing areas where there's no FMP. And so I think they just broke it up into two parts and said, look, if there's an FMP, yes, state, you can manage your vessels that are doing commerce in your state, but it's got to be consistent with the fishery management plan. And if there's no fishery management plan, I don't care what you do with that fishery because I've already decided that it doesn't require conservation and management. So there is no standard, which is why you see there's no standard in Section A anymore. And that's the predicate for the no FMP is going back to 1852 H1 says it shall for each fishery under its authority that requires conservation and management. And so the council would have had to decide that there was no need for any conservation or management of this area. So they didn't have to prepare any FMP, but in this case, there's no dispute that the FMP has been triggered and bent. And your point is that once that happens, the council has to prepare an FMP, which could delegate all of the responsibility to Alaska, or they could operate concurrently, I suppose, that the feds would do some and the state would take the balance or whatever. But it always has to be pursuant to some form of FMP. That is our argument. And what would the nature, I think Judge Hurwitz asked this originally, what would the nature of an FMP be if the federal government decided, look, Alaska is doing a great job. So what would have to go into an FMP that would make it in any way burdensome on the government to prepare it and justify A, why it requires conservation and management and B, why Alaska is doing a great job? So I think that is exactly the procedure that is set up. And so what would it look like? I think what the council could have done and what I think the act required it to do if it was going to go down this route was to say, let's just take those measures that the state is using and incorporate those measurement matters. If they think their sustainable salmon policy or whatever is consistent with the Magnuson Act, well, let's review it and let's put it into the fishery management plan. And then you might challenge that and say, well, it's not consistent with the federal act. That's right. And that's what's really going on here, isn't it? The state manages in a way differently than the federal act seems to require. I know that's not what's in front of us, but that's really what's going on. That's the driving thing. These guys, this fishery is their life. They're sitting here in the courtroom during the fishing season because this is so important to them. They want this fishery managed in perpetuity. And this process, it's not just the national standards that are important, it's the process that the Magnuson Act requires for management. It has the scientific and statistical committee that brings in the scientists from around the various states and brings in to bear Washington, Oregon, and Alaska to make these complicated management decisions. And the Cook Island Standard Fishery is facing these kind of difficult problems. And those problems are only going to get worse over time as we face ocean acidification problems and climate change problems. And the state, we're not saying the state shouldn't be involved, it should be intimately involved, but they need help. They need help, the kind of help that the Magnuson Act provides. Okay, now, as I understand your argument, you're relying on Chevron One as this is the plain language, there's no ambiguity, and you have not broached the subject of the alternative being that, okay, maybe it's ambiguous, but it was still that the interpretation of the You're basically saying you went on Chevron One and you don't get into whether the government has the discretion to interpret a flesh-out and ambiguous statute. I think we did address that, Chevron Step Two. Our core argument, of course, is this is Chevron One. Well, you addressed it in the district court. Do you address it before us? Do you make a Chevron Two argument? Yeah, that's the second, in the opening brief, second step of the argument, which is that even if they have some discretion, it's arbitrary and capricious. So this is a challenge to the regulation that implements Amendment 12, is that correct? That's correct. And the challenge is that it's contrary to law, contrary to the statutory mandate that they shall, and the district court came along and said, well, it's ambiguous whether they shall. Right. A decision that the D.C. district court just declined to follow, finding that it was, in fact, not ambiguous. So let me just go on with you. Let's assume that we disagreed with you on Chevron One. What would be the appropriate thing to do with Chevron Two? Would it be for us to address it in the first instance, or send it to the district court to address it in the first instance? I think the district court, we briefed it before you, so I think it's appropriate. And the district court said, I don't need to get the Chevron Two, because- No, the district court did go- Did get the Chevron Two, sorry. Did get the Chevron Two, and so we did brief Chevron Two and the alternative. So let me ask you about your, you have a few minutes remaining, about your NEPA claim. And I must admit that I've always had a difficult time figuring out what a hard look is. But it does seem to me, in this case, that it was apparent that the alleged deficiencies, if you will, in the state's ability to protect the species, were in front of the agency. Everybody knew the state's jurisdiction was limited in some respect. And the state said, well, but that's not likely to happen very often. And we've been managing it for a long time, and it apparently has only happened in a big way once with Mr. Big. So my question is, if all that's in front of the agency, and the agency says, we believe Alaska, why isn't that a sufficiently hard look? Well I think that is a start to a hard look. And the other side of that hard look is address the comments that were put forward by the fishermen. I mean, if anyone is going to know how to exploit a fishery, a la Mr. Big, it's going to be the fishermen. And we put forth an explanation that it's actually not so bad. And so there's arguments about whether or not the state's plan really would efficiently regulate the fishery and really, and so my question is still, what kind of a record does the agency have to make to let us conclude that it gave a hard look? Or do we just have to know that all these issues were in front of the agency, and it considered them and came out one way or the other? I think an explanation in the record as to why, they just basically say, I mean, they basically say, well first they say, you know, we're not actually relying on the state's ability to prosecute. I mean, they say that in the record. So a lot of what we saw in the briefing was, well, the state will prosecute, the state will prosecute. Yeah, but you see, to me that says, we're not relying on their ability to prosecute because we know that there may be a few circumstances where they can't, but we don't think they're all that important. Now, I know I'm reading something into it. So when they promulgated the regulation, they did give quite, they went through all, they categorized the comments and they responded to them, and which, what didn't they respond to? What exactly didn't they respond to? We made specific comments about why, and the mechanisms by which someone would exploit the fishery, and those weren't addressed. And in addition to that, we also made, I think it's very important to comment that there was, you know, a fishery disaster that occurred right before, and that's not addressed at all in the NEPA document, obviously, or in the final decision when it was still before them. They didn't address that part at all. So they should have done a supplemental. They should have decided whether to do a supplemental, and they should have reflected that in the final decision. If they thought there wasn't a need to supplement this, they should have said in their federal register notice that came out five months after the disaster happened, they should have said, you know what, this is just what we already talked about. We don't need to do a supplemental. But it's not in their record. They're just making this up after the fact and saying, well, we didn't need to do a supplemental, but there was still a decision before them. And just to tail up on that, it also does render their decision, the disaster also renders their decision, you know, arbitrary and capricious because, I mean, they made up this standard, is the state managing in a manner consistent with the Magnuson Act, and they didn't consider was an obviously relevant factor, which is that a disaster just happened on the state's watch for what they say are unknown reasons. So that's an argument that even if this wasn't ultra-virus, it was arbitrary and capricious because they didn't sufficiently justify it. That's right. Okay. Okay. I'll hold for rebuttal. Thank you. I'll give you two minutes rebuttal. Okay. May it please the court, my name is Ellen Durkee. I represent the National Marine Fishery Service. With me at council's table is Lorene Smoker from the service, and I'm going to be sharing my time with Mr. Bosong from the state of Alaska. This court should affirm the district court judgment upholding the approval and implementing regulations for Amendment 12 to the Federal Fishery Management Plan for salmon fisheries off the coast of Alaska. The amendment removed from the scope of the plan management area three discrete areas where net fishing for salmon has historically occurred. Since statehood, these pockets of net fishing have been managed by the state of Alaska, which has allowed comprehensive management of salmon fishing in federal waters, adjacent state coastal waters, and inland rivers. The practical effect of the amendment was to continue the status quo of state management of these discrete areas. I think we all agree on that. The question is, is that consistent with the statute? The statute says that the council shall promulgate a fishery management plan when an area requires conservation and management. We all agree this area requires conservation and management. The quarrel is about who does the management, right? Incorrect, if I may say. The statute does not talk about an area. A fishery. It says a fishery. It talks about a fishery. The fishery in this case is salmon, all species of salmon, and there is a fishery management plan. There is, but you've excluded from the fishery. We can play with terms, but you have excluded from the fishery management plan this inlet, correct? I think it's an important distinction between having a fishery management plan, which they have done. We understand it's a salmon plan. What is managed under that plan, and what the management unit is. There is no fishery management plan that covers this geographic area, is there? Correct. This geographic area is within the EEZ. The focus here is on the upper Cook Inlet, and there are portions of the upper Cook Inlet that are within the EEZ. That's the part that's been cut out? Correct. By Amendment 12? Right. There's no dispute in this case that those portions that have been cut out by Amendment 12 require, in the generic sense, conservation and management, correct? In the generic sense, but they do not require federal conservation and management. You're going right where I want to ask you a question. Therefore, if we do not agree with your point that the word federal must be read into this statute, do you lose? No, because the concept ... In addition to federal, I think you have to look at the national standards. Perhaps I'm saying this in a different way, but I think it's an important point, that the national standards are to avoid duplicative regulation. One of the things that is appropriately looked at is whether there are complementary regulatory mechanisms that relieve the need for the regulation that would be included. Under those circumstances, why can't you just explicitly defer to the state within the plan? What happened here is what we call deferral, but I guess the question I think you're asking is whether there's an explicit delegation. I'm sorry, delegation. Right. Well, the final rule talks at length, as does the EA, as to the explanation as to why delegation was not the selected alternative. The reason in general is that you didn't do delegation because the state's management is not perfectly consistent with the MSA, correct? Well, it is definitely consistent with the ... Well, it is a different ... Projected. The MSA requires yield management. Right. The state's system does not. The state's system measures by the number of salmon that pass a certain point, correct? Correct. The state-based management is a state-based management, which is well-established to be the best for salmon. It may be terrific management, but one reason you didn't want to incorporate it into a plan was because it's not consistent with the MSA, correct? What the MSA would require of a delegated fishery management plan is that certain requirements in section 303 be included in the plan. Which the state's plan would not have met. Which would include an annual catch limit. The point is that the reason that deferral was chosen among the reasons is because an annual catch limit does not contribute to the conservation management of the species. It's simply added regulation that's not serving a positive purpose for the conservation management of the species. Let's get back to the language of the statute. I said if you don't read federal in, you think you still win. I take it you read subsection A as giving you the ability to defer under what circumstances? The circumstances, and I think this goes back to the fact that it's an amendment, not a question of whether they do a federal management plan. I don't want to keep going back there. You have no federal management plan that covers this geographic area, correct? In the EEZ? The federal management plan does not cover regulation in this coven-led area. No matter how we say it, there is no FMP for this geographic area, correct? The question is whether the act requires one. It's not whether you can accept it out. The question is whether the act requires one. The act does not require that a fishery management plan include the entire EEZ in it. In fact, the 1979... We all know what the act says. It requires that there be a FMP for those areas of the EEZ that require conservation and management. We all agree this area requires conservation and management. One of your arguments is that we should read the word federal into the act, and I understand that argument. I was saying, where else does the act tell me that if an area requires conservation and management and we don't read the word federal into it, you get to decide not to manage it? I think there's two places that reinforce... I think, first of all, it is ambiguous as to what needs to be in the fishery management plan. The other areas that we've pointed to that support a deferral is, first of all, National Standard 3. The amendment has to comply with those. The National Standard 3 talks about how you formulate a management unit to make sense and national... I don't want to cut off your argument, but this is where I'm having difficulty and you and I are missing each other. Those national standards deal with the standards that relate to an FMP, do they not? Right. This was an amendment to an FMP. Which exempted the area from the FMP. In other words, what they're saying is when you promulgate an FMP, you must do it according to these following seven, I think, more national standards. You're saying I can use the national standards to determine that no FMP is required in an area where conservation and management is required? Yes. When it comes to NEMPS in the form of an amendment, that is absolutely what is going to be looked at. I'd like to call the court's attention to the part in our brief where this kind of legal mechanism is used frequently. Never challenged before then. Never challenged because most regulated parties are not asking for dual regulation. The fact that you do it a lot doesn't help us determining whether it's legal if there's never been any legal challenge to it. There's no estoppel going on here. These fishermen don't have to challenge your use of it in Massachusetts or someplace else, do they? Correct. I think the point I was trying to make is that the direction that they're taking it would be a big change in the way things are managed. Not just in Upper Cook Inlet, but it would be a real shift from the way that the agency has done this for a long time. The very first fishery management plan for salmon fisheries off of Alaska did not include all of the EEZ. The western part was added later. There are fishery management plans for Alaska fisheries that the management unit is only a portion of the EEZ. At that time, did they decide that it was necessary? Excuse me, I'm sorry. There was a need for conservation and management? You said earlier that on the western side, there was no plan. Right, because at the time, there were other regulatory mechanisms, and so you didn't need a fishery management plan. There were treaties that prevented fishermen. Then those have changed. That's all changed, right? Correct. Then the agency can surely say, as it did in the D.C. District Court case, for example, we've looked at this fishery, and these particular species don't require a plan. They're doing okay. It's not being overfished. That's not what happened here. You agree that this fishery needs to be managed. You're just saying we're not going to do it because we think the state's doing a good job. The other instances in which I'm talking about, what they illustrate is that you look not in the abstract or generic sense of conservation management, but you look in light of regulatory regulations and other complementing regulations that you have in place already. I'm sorry. I'm sorry. We're talking past each other. I apologize. Why does the regulatory practice of the agency over time help us interpret the statute? If the statute is clear, as I think your opponent argues, unless the statute's unclear, how does your regulatory practice help us interpret it? I don't doubt that the agency believes it has this power that you're acting in bad faith. With the fact that you've exercised it in the past, does that do anything for us? Yes, because I think this is a Chevron Step 2 case. This interpretation is articulated in a notice and comment rulemaking, and therefore, once you get to Chevron Step 2, then that should be controlling. You first look at the text of the statute. What's ambiguous about that statute? What's ambiguous is that federal conservation management, the whole question... Where in the provision we're dealing with, where does it say federal? Where does that come from? It comes from... You're just writing it in. The question is... Each fishery under its authority, that requires conservation and management. You say, which requires federal conservation and management. There's no federal there. But the full sentence says, the whole inquiry is... Read us the full sentence. I'm looking for ambiguity in it. The full sentence says, shall, and I know there's an argument that shall means may, but the district judge rejected that one, I think, and that's a hard argument for you because the statute uses may in other portions. Assume that shall is mandatory for a moment. What's ambiguous in that sentence? If I may. Go ahead. All right. Fishery under its authority that requires conservation and management, prepare and submit to the secretary a fishery management plan. If you look at the full phrasing, the inquiry is to whether you need to prepare a fishery management plan. That is reasonably interpreted in our view, particularly given the fact that the Congress amended the statute to recognize state regulation in the absence of a fishery management plan. That the clear implication here is that the reasonable inquiry and a reasonable interpretation of this provision is, the inquiry is whether you need federal conservation and management Complete the sentence. Complete the sentence. I'm just asking for what's ambiguous in the sentence, and it says you shall prepare a fishery management plan, and it goes on to say for fishery that requires management and conservation and management, and isn't this... So where are the ambiguous words in this? I understand that we're trying to read the plain language of the statute and looking for an ambiguity in the sentence. Tell me what words are ambiguous in that sentence. If you look at the full phrase, the inquiry is for the purpose of preparing a fishery management plan, and chopping it up to say first you decide whether in the abstract or generic sense there's conservation management, then we'll prepare a fishery management plan. No, I think the purpose of this is to prepare a fishery management plan, and the inquiry is then, is it needed? You're saying that the inquiry is whether it requires, quote, federal, close quote, conservation and management, and therefore prepare a fishery management plan. That's where you would put imply or infer federal. Right. It's a federal fishery management plan. I think that's clear. And that's your point, but I'm still asking why is this sentence, which doesn't have the word federal in it, ambiguous? What in the sentence makes it not plain and straightforward? We're sort of missing each other there. We only get to go to chevron step two if the statute isn't plain and unambiguous, and this sentence seems to me not to have any ambiguity in it. Why is it ambiguous? What's ambiguous about this sentence? With all due respect, I think you have to read the statute as a whole, and if you just pick out one phrase in a statute, that's not the proper approach to statutory interpretation. It's not a phrase, it's a phrase. It's the mandatory part of the statute, and even accepting your theory that you would report into the statute requires federal conservation, it still connotes that there is some evaluation that the council has to do, that they will review fisheries that need conservation and management, and then you're saying, okay, in that review, the only review is whether it needs federal management, and therefore, if it's federal management, then you prepare a FMP. And you're reading in federal, where the natural, and what is it that the, you know, in the total statutory context suggests that that was what we, Congress meant, it was only federal. What, the way that it's approached, and was approached here, is does the fishery need an FMP, and I'm not, and they're not limiting it to one little, you know, pocket. They're talking about does the fish, the fish... No, that's not what they say. It says, it is a question, their initial review is whether the fishery requires conservation and management. Then they prepared... And they prepared, there is a fishery management plan for salmon fisheries. This system would not work but for the fact that the fishery management plan prohibits fishing for, you know, the huge area of the EEZ. And so, you know, trying to, they're really trying to change the definition of what the fishery is here to suit just a small portion... So now you're saying fishery is ambiguous. Isn't fishery defined in the statute? Fishery means a stock of fish or fishing, and... And here it's a stock of fish? Yeah. And nobody, there's no dispute here what the stock of fish is, is there? Right, it's five species of salmon. Right, so why is the fishery, why is the term fishery ambiguous? Again, that's not my point and I... Okay, so it's not ambiguous, so it is requires ambiguous. Well, requires depends on the circumstances, of course. It's not a, whether it's required or not depends on the inquiry that was done here. And supposedly the council has decided that the fishery requires conservation and management. By somebody. The fishery... Okay, and then you're saying, but then there's implicit, it requires it by the feds and not the state. And therefore what follows is an FMP for the federal portion. Is that how you get federal? Right. There's no federal portion because they've decided it doesn't need federal conservation and management. There is, I can't separate the fact that there is federal, there is a federal FMP for salmon fisheries. And then the question becomes, does it have to include management provisions for every aspect of that or can it defer? The statute, I'm looking at the overall statute and it has a delegation, you call it delegation or deferral, and it has a delegation. They can say, you know, we've decided this fishery needs overall conservation and management. We've looked at a section of it and it's been adequately done. It meets all our standards. This is exactly what council said. And then you, the be on record as to why A, needs it, and B, why the state is adequate. Answer if you can. I know the time, but I would like to get back to why delegation. What they perceive as what would happen in delegation is incorrect. And what would happen in a delegation, what they want to get at are state, you know, the escapement goals, the allocation of fishing between commercial fishing and personal. That would not change because that all occurs in state waters. But you agree there's no delegation here? Yes, there's no delegation in this state. I want to give your co-counsel an opportunity to address this because he's representing the state of Alaska. We've said a lot about the state of Alaska here. Thank you very much, your honor. I appreciate the time. Five minutes. Your honor, Seth Boatswain for the state of Alaska. I'll try to adjust the questions that have come up. Your honors, every fishery requires some conservation and management. No matter how abundant a species might be, there has to be at least some management, some permits, some record keeping, something. So under plaintiff's reading of the statute that every fishery that requires conservation and management requires a fishery management plan, then every fishery is going to have a fishery management plan. We've got the D.C. District Court decision that says with respect to some species in some area, the federal agency correctly decided or decided not arbitrarily and capriciously that conservation management wasn't required. So I don't understand why we can't say this is so far off and fishermen don't go there. There's not so many fish there. It doesn't require conservation and management. Aren't there some areas like that? Let me address your question, your honor, and I want to make one other point. In the District of D.C. opinion that was submitted to supplement authority, the angler's case, the court did find that the herring shad fishery needed conservation management. There were conservation management measures in that fishery. There were bycatch provisions. If in the mackerel fishery they caught a certain amount of bycatch of herring and shad, they would shut down the mackerel fishery. That is conservation management of fishing for herring and shad. So it wasn't a case that there were just so many herring and shad, they don't need conservation and management. The key, the District Court in that case said the question was, does it need conservation and management that inclusion in a federal fishery management plan would provide? That's another way of saying, does it need federal conservation management? It depends on which sentence you take out of that opinion. The front note says the District Court in this case was dead wrong that you don't have the discretion not to do a fishery management plan for those areas that require conservation and management. And respectfully, I think the District of D.C. over-read what the moral of the story is. I'm just saying you can't pick out the parts of it you like and tell me it was smart and pick out the part that directly deals with this case and tell me it was wrong. What I can say, your honor, is this. It reviewed it under the arbitrary and capricious standard. Did it comply with the national standards? And that's what we're asking you to do here. Does this amendment, Amendment 12, an amendment to a fishery management plan, does it comply with the national standards under the arbitrary and capricious standard? That question is clearly yes, it does. One other thing. That's only if you get to Step 2 of Chevron. That's correct, your honor. We've been talking to your co-counsel there about Step 1 for the last 20 minutes. Let me address Step 1. Under there, every fishery requires some conservation and management. Under their reading, every fishery gets a fishery management plan. Well, what we read is what Congress wrote. Each council shall. In 1983, when they added that conservation management language. Remember, before 1983, the language just said every fishery gets a plan. Now it says every fishery requires conservation management. When Congress added that language, they said it was to clarify that councils do not need to implement a plan for every fishery. It doesn't, legislative fishery doesn't get clearer than that. You can use that at Step 1 of Chevron to find that the statute is not ambiguous and it is actually exactly what Congress reads. But that's the way, with all respect, the statute doesn't require a plan for every fishery. That's clear. But everybody in this case agrees that this fishery requires conservation and management. Generally, not a federal. I understand, without reading the word federal in. So there may be some that do not require conservation and management. That's possible from the reading of the statute. But why do I read the word federal into here? Respectfully, Your Honor, you do not have to read the word federal into it. Look at conservation management as a defined term. I'll paraphrase it. It means every rule, regulation, condition required to sustain and restore fishery resource. Okay? So what you have to ask yourself is what rules, what regulations, what conditions? It would not make sense. If you're talking about state rules, state regulations, state conditions, why would a council have to prepare a federal fishery management plan if a fishery requires state regulation? The statute only makes sense if a council has to prepare a federal plan that requires federal regulation. It doesn't make sense otherwise. And if you were to read it otherwise, you say reading federal into the statute. I say just read it in context. If you read it otherwise, as plaintiffs do, all parts of the statute fall apart. Why would Congress say manage stocks as a unit when it can't be done here? If you accept plaintiffs reading the statute, why would Congress say don't have unnecessary costs? It can't be done here. The state's managing this fishery, as the council found, perfectly consistent with the act, but now we're going to have this unnecessary federal fishery management plan. Why would Congress have said states, you can manage in the absence of a plan, you can manage in state vessels?  Just read it in context. Don't add the word federal to the statute. I agree that would be improper. Just read it in context. Why doesn't the jurisdictional provision for the states, which says the state's laws and regulations are consistent with the FMP, why can't the concern you have about this particular area be addressed under that clause where the FMP says we accept Alaska's laws and regulations as consistent with this particular area and that's a precise way in which you reach it? If you force the council to prepare a federal fishery management plan for this fishery, the fishery is going to be managed completely differently than it is now, and in a worse way, according to the Council of NIMS. Why do you say that? Because the Council of NIMS found that escapement-based management, which is what the state does, is a more effective way to prevent overfishing. That's what the Magnitsky-Stevens Act is all about, to prevent overfishing. I understand that. Why can't they say we don't need that, that that policy doesn't apply to this particular area? In other words, sanction what Alaska's doing. They can't, because if you require a plan, then a plan requires annual catch limits, a completely different way of managing a fishery than escapement-based management, and a worse way, a worse way. But whether it's better or worse, it's the way the federal act requires, right? Incorrect, Your Honor. Well, let me ask it differently, because I don't want to quibble about words. If you have a federal management plan, then you must apply the federal standards. That's the key. The key is the act does not require annual catch limits. It requires a plan to have annual catch limits. If there's no plan, no annual catch limits. Okay. Thank you, Your Honor. Got your point. Thank you. I just want to make a couple of quick points in rebuttal. There was a mention of this being little pockets or portions of a fishery. I just want to make clear that we're all aware this is talking about 1,100 square miles, this fishery, the federal park and cooking inlet. Tens of millions of salmon run through that fishery every year. It's one of the best fishing locations in the world. This is not some little pocket that they excluded. I heard a couple of times something surprising, which is that if they were to somehow incorporate the state's escapement-based management goals, that the whole thing would fall apart. Well, I mean, the fishery management plan has two parts, the west area and the east area. Well, for the east area, the council did adopt the state's escapement-based management goals as a surrogate for annual catch limits. The idea that they somehow can't do this is simply not correct. The truth is they don't want to do it, and that's been evident since 1976 with Senator Gravel saying, this is a bad idea, it's duplicative, we can't figure out how to do it. You've got them saying it again in 1983, hey, why don't you just turn this whole fishery over to us? Again and again, they never got that authority. It's clear they don't want to do it. It's equally clear that they're required to do it. I heard the council for the federal government come up and say, you know, this system wouldn't work but for the fact that there's this fishery management plan elsewhere in the west area that prohibits fishing in the rest of the west area for the fishery. I mean, to me, if we were to go to Chevron step two, that sounds to me like an admission that federal conservation management is required. In other words, Ms. Durkee just said that the system can't work unless there is federal conservation management for this fishery. The last point I think I – Go ahead, no, the clock is a little off. Oh, if I'm out of time, I can – Make your last point. Okay, my last point was simply the national standards that Ms. Durkee pointed to, sections three and seven. Those go into the contents of what's in a plan. There's nothing in the statute itself that talks about when a plan is required. Right. And I'll stop there. Okay. Thank you, counsel. We appreciate all arguments on this interesting case. And I apologize, Ms. Durkee, for she and I talking over each other a couple times. The matter is submitted at this time and safe travels.
judges: Fisher, Paez, Hurwitz